Good morning, Your Honors. Alan Rynok, appearing for the plaintiff, Carmen Blair, Chaplain Blair. May it please the Court, I think there are numerous errors, both of law and in not interpreting the facts in the light most favorable to the plaintiff. And I think that they revolve around the difficulty the Court had in understanding what is religious discrimination under these unique facts. It was apparent, as I've reviewed the record, that Judge Snyder really just did not see how much direct evidence that there was of discriminatory bias against Chaplain Blair, who is a accomplished, recognized Christian chaplain. And the direct evidence, I think, goes both to the actual decision to remove her from the new hospice unit less than two months after she had started there, and also to various kinds of what you might call stray remarks that reflect a generalized type of bias by the folks at the hospice unit who were not her supervisors. Now, her supervisor, Chaplain Michael Vasquez, he admitted that he didn't know any specific problems that she had that led Dr. Rosenvelt to recommend that she was not going to succeed in her probationary term. He didn't know. He admitted that he had never counseled her. The VA violated all of its rules and policies for dealing with probationary employees in the way that they treated Chaplain Blair. And I think that Judge Snyder really did not see that the very rationale that she was somehow inadequate as a chaplain and unable to minister to the non-Christian patients, that this was itself, in the absence of any evidence in the record to support that view from Dr. Rosenvelt, it was direct evidence of bias. Dr. Rosenvelt admitted that he himself was relying on what others, especially the nurse manager, told him. And Chaplain Blair's testimony was they had very limited interaction, maybe four times, when they actually had any sort of meaningful interaction. And so there were assumptions made that somehow Chaplain Blair was intolerant. She was falsely accused of calling the Teano Indian hospice patient a devil worshiper, which, in my view, reflects, since she clearly vigorously denies that, that reflects more on the person making the accusation and how they perceive Chaplain Blair than it does on Chaplain Blair, who was responsible for certifying others to become credentialed chaplains. She certainly understood what chaplaincy ministry was. And another key mistake, I think, that the court made below was to assume that somehow it was Chaplain Blair's view of an appropriate interfaith ministry that was inconsistent with the VA's requirements. Dr. Rosen, the court recognized that Dr. Rosenvelt appeared  to be, but that was not reflected in the official VA documents that describe the duties of a chaplain. Everything that Chaplain Blair was accused of, she was performing consistent with the VA's duties. And of course, when it comes to the facts as to whether she was capable of ministering to the Jewish and Teano Indian hospice patients, there were abundant declarations from the family and friends of those patients, just very laudatory and praising her for how sensitive and caring and compassionate she was towards all of them. Now, was part of her job having an ability to work effectively as a member of a team? It wasn't a job where she worked in isolation, right? They functioned as an interdisciplinary unit. This is certainly true. And there are disputed issues of fact. Dr. Miller, I'm sorry, Marilyn Miller, the dietician, and Dr. Glussman, they said that she did get along well with others. You know, this is, in some ways, this is kind of a mean girl situation where you have the two women who are more secular, spiritual, or Chaplain Blair perceived her, perceived them as more new age, and they had been working together for some time, excluding the new girl. And forgive me if I use the girls, I don't mean it in a demeaning sense. We know you're talking about the movie. Right, thank you. But, you know, who's, it's only two months. I thought that Blair herself acknowledges that she did have difficulty working as a member of the unit because of the differences in the way, I guess, she felt that, how she thought her role was versus other people, and that created some tensions with other people on the team. But this also goes to something that the court did not discuss. So there's a number of different reasons given for why they wanted Chaplain Blair removed from the hospice unit, and of course, the legal standard is that discrimination need only be a substantial motivating factor. The fact that there's all of this smoke and other issues going on doesn't detract from the focus on, is there sufficient evidence of discrimination from which the jury, try or fact, can find in her favor? And the discrimination is because she was a Christian? Correct. And she was hired because she was a Christian? Correct. And Dr. Rosenfeld was one of the people who hired her?  And this is two months after she was hired because she was a Christian. You're saying that they discriminated against her because she was a Christian? That is correct. And the testimony is that they perceived her as being lacking in tolerance, which there's no evidence other than their unsubstantiated perceptions that she was lacking in tolerance. But that's really not the same as being fired because you're a Christian. It's because you have a different view of how to perform the job of a chaplain. I disagree because there's no evidence in the record that any of the folks at the hospice unit who rejected her had direct experience with her interaction with the patients. Those who had interaction with the patients who were able to see how she functioned as a chaplain, they all submitted declarations in her support. Well, but what evidence is there that they fired her because she was a Christian? This gets to the heart, I think, of the difficulty in understanding the religious discrimination here. The VA recognizes the importance of chaplains being faithful to their own religious tradition and being able then to care for people in very different religious traditions. That standard was not what Dr. Rosenfeld and the others at the hospice unit supported. They asked a rabbi, for example, not to pray in God's name, to pray a prayer that would not be within Judaism a prayer. They were the ones that were intolerant of expressions of faith. Yes? I'm not sure I answered your question. Yeah, well, you know, this is a very complicated problem of how to have chaplains in government institutions. You know, and the problems, the establishment cause and the free expression and the, it's a hard problem to have government delivering religion. And, you know, there's clearly a disagreement between her and some of the people, at least, in the VA about what a chaplain should be doing and how a chaplain should be doing the job. Whether that's discharging someone because she's a Christian is, you know. So if I may, it's true, you know, religious bias in this case may differ from many types of bias that we're more familiar with. If someone is subjected to an ethnic slur, words that we all know for black people, Jewish people, Asian people, Hispanic people, it's easy to see that as an evidence of bias. If a Christian is called intolerant and unable to minister to non-Christians and there's absolutely no evidence of that, that's the same kind of unsubstantiated slur on their faith. The reason I don't see this as difficult in terms of the establishment clause or the constitutional framework is because she was functioning according to the VA policy. What you just said is not part of her faith, being intolerant or all those other things. That's not part of her faith. It's not part of being a Christian that you're intolerant. If there is anything about being intolerant, it may be untrue that she was intolerant. But it's not because she's a Christian. Well, my theory of the case, Your Honor, is that this is a case of stereotyping, that the evidence shows she was not intolerant, that they were intolerant of her, that they stereotyped her as being intolerant and therefore unable to fulfill her proper duties when in fact all of the evidence of the people that she was caring for showed that she was fulfilling her duties in a wonderfully interfaith and inclusive manner. Your case is essentially one that you're kind of surmising is a circumstantial case because you've acknowledged you have no direct evidence. I mean, nobody made any slurs to her or said anything to her directly as I understand it. Well, no, I think there's a lot of direct evidence because the very basis of the decision that Dr. Rosenfeld communicated was on account of her religion. They said that? Let me find the... They said it's because she was a Protestant or a Christian, they were going to let her go? What he said was Chaplain Blair has had extreme difficulty developing an understanding of the spiritual issues faced by patients on the unit, which was completely false. So there were... Maybe, but where's the evidence that they just didn't like her because she didn't part her hair the way they wanted her to? I mean, I'm trying to find the direct evidence that you have, that you say you have of discrimination predicated on her religion. Well, I think when you lie about someone based on complete hearsay, lack of any specific information that the way that they are carrying out religious duties as a Christian chaplain, to me, that's the very basis of the decision was religious. She wasn't the kind of religious chaplain that they expected or wanted. And it was completely based on nothing. There was no evidence to support it. And when there's no evidence, that's bias, that's prejudice. It's not just wrongful discharge? No, because of her religion and prejudice. Where is the evidence of that though? You see, the district court said, okay, there's a prima facie case, flips over to the other side. They put a litany of reasons down by which they justify their termination of your client. And then the district court said, okay, where's the meat, so to speak, if I can call it a commercial, where's the beef? And the district court said, you couldn't come up with any. It was just this, well, it must have been because there's other people that say she was great. And these people said she wasn't great. So it must have been religious discrimination. I think when you mischaracterize the appropriate interfaith ministry of a chaplain falsely as being intolerant, rigid, unable to minister to non-Christians, that's a form of stereotyping her as an intolerant Christian minister. And that's exactly what there's direct evidence of. But the difference is, is it stereotyping her as an intolerant Christian or an intolerant person? I would say an intolerant Christian minister as a chaplain, and that's why she was fired. I certainly understand your argument, counsel. Thank you, your honor. Good morning, your honors, and may it please the court. Assistant United States Attorney Jessica Che on behalf of the VA. This case is about an interfaith chaplain who almost immediately after beginning her employment in the VA demonstrated significant difficulty with working as part of a team. Notwithstanding Chaplain Blair's own opinion as to her qualifications and to what being a successful chaplain required, the VA's reasonable expectations that each member of the interdisciplinary team be able to work collaboratively and function as a unit is entitled to deference here. The VA is also entitled to a favorable same actor inference under which Chaplain Vasquez's initial willingness to hire Blair just months before he made the decision to remove her is extremely strong evidence that he was not biased against her because she is Christian, particularly whereas here, Blair was hired for a position that was specifically advertised as one for a Protestant interfaith chaplain. Here, instead of making efforts to integrate with the rest of the staff, Blair made it clear almost immediately that she viewed her role as distinct from others. She repeatedly endeavored to define the boundaries of her position and claim territory to those duties which she viewed as within her sole responsibility. Simply put, Your Honors, Chaplain Blair was not a good fit and that is well supported in the record. Significantly, her difficulties continued even after her transfer to the West LA campus where she continued to demonstrate an inability to fulfill the basic requirements of her position. Essentially, this is an interpersonal issue rather than a religious one and Chaplain Blair has not presented any authority that what she characterizes as a preference for a more secular approach to chaplaincy over a more religious one is probative of religious discrimination. As Your Honor correctly recognized, the VA is a public secular institution which serves individuals from a myriad of different religions, including those who don't subscribe to religion at all. Thus, in terms of its chaplaincy, it must walk a very fine constitutional line between being able to minister to people of all faiths and provide religious services to those who request them without being in a position of endorsing any one particular religion or religion generally. In essence, Your Honors, the record is such that no trier of fact under these circumstances could reasonably conclude that the VA discriminated against Chaplain Blair because she is Christian. Instead, the record reflects that she was simply perceived as not being a team player, which undisputedly was a crucial requirement of the hospice team's treatment model. Because she failed to establish that the agency's multiple legitimate business reasons for removing her were pretextual, unless there are questions, we would just submit that the court affirm the award of summary judgment in favor of the VA. I don't have any questions. I don't either. Thank you, counsel. Thank you. We'll give you a minute for rebuttal if you'd like. Thank you. Just trying to think what to focus on. I really don't think that this case has anything to do with the constitutional obligations of how chaplaincy is carried out in a federal government facility because all of the evidence shows that Chaplain Blair was an appropriate interfaith chaplain functioning according to the job description. And I think what is ignored here is that the VA had extensive written policies and obligations, both in its own policies and under the collective bargaining agreement, that if there were any deficiencies, she had to be counseled. And this is a probationary time where the whole point of probation is to help someone succeed. The fact that they ran her off in less than two months with no counseling, no written or oral warnings or opportunity to improve, I think is very strong circumstantial evidence of discriminatory animus. Thank you, counsel. Case to stargate will be submitted.
judges: Reinhardt, Nguyen, Ezra